The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. AIG Insurance Company was the carrier on the risk.
3. The employment relationship existed between the parties on August 24, 1994, and at that time, plaintiff was employed as a computer-operating reservationist at U.S. Air's location in Winston-Salem, North Carolina.
4. Plaintiff contracted lateral epicondylitis and radial tunnel syndrome of her right arm, both of which are occupational diseases caused by conditions characteristic of and peculiar to her particular employment, within the meaning of N.C. GEN. STAT. § 97-53 (13).
5. Plaintiff first displayed symptoms of pain in her right arm on May 27, 1992. She was out of work and was temporarily totally disabled as a result of the lateral epicondylitis in her right arm for a period of five days, from June 10, 1992 through June 14, 1992. She returned to work on June 15, 1992. Plaintiff did not receive temporary total disability benefits for that absence, which was less than seven days.
6. Plaintiff was again out of work and temporarily totally disabled as a result of the radial tunnel syndrome and lateral epicondylitis of her right arm for a period of 130 days, from February 10, 1993 through June 20, 1993. Surgical decompression of the radial nerve was performed by Gary Kuzma, M.D., on April 22, 1993. Plaintiff returned to work on June 21, 1993. Plaintiff received temporary total disability benefits for the absence at the compensation rate of $375.02 per week, which was determined from her average weekly wage of $564.00 at the time her disability began.
7. Plaintiff worked at her regular job at U.S. Air as a reservationist from June 21, 1993 until June 26, 1994, when she took paid sick leave from U.S. Air for a neck condition which is not at issue in this proceeding. Plaintiff's physician, Dr. Eldon A. Beard, certified that she was unable to work because of her neck condition as of June 24, 1994, and referred her to Harlan B. Daubert, M.D., for treatment of the neck condition. Plaintiff's last visit to Dr. Daubert was on September 19, 1994, at which time Dr. Daubert certified that plaintiff's neck condition would permit the resumption of work on September 22, 1994.
8. On August 24, 1994, Dr. Kuzma determined that plaintiff was capable only of one-handed work as a result of the lateral epicondylitis of her right arm, and her inability to do anything other than one-handed work has continued through the date of the Pre-Trial Agreement. At all pertinent times, plaintiff's job at U.S. Air as a computer-operating reservationist required her to use both arms; and U.S. Air has not had any one-handed work available for her.
9. On May 18, 1995, Dr. Kuzma performed a surgical reattachment of plaintiff's right lateral condylar structures and debridement of the right radiohumeral joint. Plaintiff had not reached maximum medical improvement as of the date of the Pre-Trial Agreement, and continued to be under Dr. Kuzma's care.
10. The issues for determination are:
 a. To what average weekly wage and corresponding compensation rate is plaintiff entitled for the period of temporary total disability that began on August 24, 1994.
 b. Whether plaintiff is entitled to temporary total disability benefits from August 24, 1994 through September 22, 1994.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a forty-nine year old married female.
2. Alexsis, Inc., the defendant-third party administrator, attempted to accept the compensability of plaintiff's occupational disease, by tendering an I.C. Form 21 Agreement for Compensation. However, plaintiff refused to sign the Form 21, due to a dispute over the date at which the average weekly wage was determined. The temporary total disability checks were returned by plaintiff. However, defendants have paid for medical expenses incurred.
3. Plaintiff first became disabled from work as a result of the lateral epicondylitis on June 10, 1992, and at that time her average weekly wage was $564.00, which yields a weekly compensation rate of $375.02.
4. Plaintiff was disabled from work on August 24, 1994, due to lateral epicondylitis, and as of September 22, 1994, Dr. Daubert found her capable of returning to work. Dr. Kuzma has opined that plaintiff suffered from lateral epicondylitis from June 10, 1992, and continuing through August of 1994. This was not a new injury or condition, but a continuation of the original condition.
5. Plaintiff's average weekly wage during the onset of the radial tunnel syndrome was also $564.00.
6. The parties entered into a written "Stipulation Regarding Compensation Rate While Matter is Pending" on March 13, 1996.
7. Despite this stipulation, defendants have not tendered any of the undisputed funds to plaintiff.
8. Furthermore, defendants did not tender any payment after Deputy Commissioner Dollar issued an Opinion and Award in this matter.
9. Defendants' failure to tender any of the undisputed funds after March 13, 1996 was not due to any conditions over which defendants had no control.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. N.C. GEN. STAT. § 97-2 (5) provides that "Average Weekly Wages shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury. . . ." With respect to occupational disease claims, the term "disability" refers to a diminished capacity to earn wages. N.C. GEN. STAT. § 97-54. In this case, plaintiff's initial onset of disability due to her occupational disease of lateral epicondylitis was June 10, 1992. Therefore, plaintiff's average weekly wage is calculated for the 52 week period preceding that date.
2. As a result of the lateral epicondylitis, plaintiff is entitled to temporary total disability compensation at the rate of $375.02 for the period from June 10, 1992 through June 14, 1992, February 10, 1993 through June 20, 1993, and from August 24, 1994 to the present, and continuing until such time as plaintiff returns to work at the same or greater wages. Defendants are entitled to a credit for benefits paid during plaintiff's refusal to sign the Form 21. N.C. GEN. STAT. § 97-29 and N.C. GEN. STAT. § 97-42.
3. Plaintiff is entitled to have defendants provide medical compensation for expenses incurred, or to be incurred, as a result of the occupational diseases.
4. Defendants' failure to tender any of the undisputed funds after March 13, 1996 constitutes a late payment of compensation justifying and legally requiring the imposition of a 10% late penalty within the meaning of N.C. GEN. STAT. § 97-18.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $375.02, for the periods from June 10, 1992 through June 14, 1992, February 10, 1993 through June 20, 1993, and from August 24, 1994 and continuing until further order by the Commission. As much of said compensation as has accrued shall be paid in a lump sum. Defendants are entitled to a credit for compensation paid.
2. Plaintiff's motion for the assessment of a 10% penalty pursuant to N.C. GEN. STAT. § 97-18 is ALLOWED on all payments not made within 14 days of becoming due. Defendants shall pay to plaintiff an amount equal to 10% of the lump sum due under paragraph 1 of this Award.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded herein shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel; and with respect to future compensation, every fourth check shall be payable to counsel.
3. Defendants shall pay medical expenses incurred, or to be incurred, as a result of plaintiff's occupational diseases when bills have properly been submitted.
4. Defendants shall pay the costs.
* * * * * * * * * * *
IT IS FURTHER ORDERED that
Plaintiff has not reached maximum medical improvement, and has, therefore, not been rated for permanent partial impairment. This decision does not, in any way, limit a determination of such benefit at the appropriate time.
This is the ______ day of December, 1996.
 S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER